ALLEN RUBY (SB No. 47109)
DAVID W. HANSEN (SB No. 196958)
JAMES P. SCHAEFER (SB No. 250417)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue, Suite 1100
Palo Alto, California 94301
Telephone: (650) 470-4500
Facsimile: (650) 470-4570
Allen.Ruby@skadden.com
David.Hansen@skadden.com
James.Schaefer@skadden.com

JAMES A. KEYTE (admitted *pro hac vice*)
MICHAEL H. MENITOVE (*pro hac vice* application forthcoming)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, NY 10036
Telephone: (212) 735-3000
Facsimile: (917) 777-3000

RICHARD S. TAFFET (admitted *pro hac vice*)
BINGHAM MCCUTCHEN LLP
399 Park Avenue
New York, NY 10022
Telephone: (212) 705-7000
Facsimile: (212) 752-5378

Attorneys for Plaintiff,
SANDISK CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| PNY TECHNOLOGIES, INC., | ) | CASE NO.: C-11-04689 YGR |
| | ) | |
| Plaintiff, | ) | **DEFENDANT'S NOTICE OF MOTION,** |
| | ) | **MOTION, AND MEMORANDUM OF** |
| v. | ) | **POINTS AND AUTHORITIES IN** |
| | ) | **SUPPORT OF ITS MOTION TO** |
| SANDISK CORPORATION, | ) | **DISMISS THE FIRST AMENDED** |
| | ) | **COMPLAINT** |
| Defendant. | ) | |
| | ) | |

Date:  September 4, 2012
Time:  2:00 p.m.
The Honorable Yvonne Gonzalez Rogers

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on September 4, 2012, at 2:00 p.m., or as soon thereafter as this motion may be heard, in the courtroom of the Honorable Yvonne Gonzalez Rogers, in the United States District Court for the Northern District of California, located at 1301 Clay Street, Oakland, California 94612, Defendant, SanDisk Corporation ("SanDisk"), will move the Court to dismiss the First Amended Complaint of Plaintiff, PNY Technologies, Inc. ("PNY"), in this action. The claims asserted in the FAC are as follows: (1) a tying claim under Sherman Act Section 1 and Clayton Act Section 3 (Count I), (2) a Sherman Act Section 1 (Count II), (3) Sherman Act Section 2 claims for monopolization and attempted monopolization in the flash memory technology market (Count II), (4) a Sherman Act Section 2 claim for attempted monopolization in the flash memory chip market (Count IV), (5) a claim for declaratory judgment of patent misuse (Count V), (6) a California state-law tying claim under Cartwright Act Section 16727 (Count VI), and (7) a California state-law unfair competition claim under § 17200 (Count VII).

This motion is made pursuant to Fed. R. Civ. P. 8(a) and 12(b)(6) on the ground that the First Amended Complaint fails to state a claim upon which relief can be granted.

SanDisk bases its motion on this Notice of Motion and Motion, the Memorandum of Points and Authorities in Support of the Motion, the [Proposed] Order, any oral argument heard by the Court, such additional evidence as may be submitted to the Court, matters as to which the Court takes judicial notice, and such other matters as the Court deems proper.

DATED: July 16, 2012.                    SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP


                                         By:    /s/ *David W. Hansen*
                                                DAVID W. HANSEN
                                                Counsel for Defendant,
                                                SANDISK CORPORATION

**TABLE OF CONTENTS**

**MEMORANDUM OF POINTS AND AUTHORITIES**

PRELIMINARY STATEMENT ..................................................................................1

ARGUMENT ..........................................................................................................3

    I.     THE FAC STILL FAILS TO ALLEGE CAUSAL ANTITRUST INJURY ...........3

          A.     PNY Does Not And Cannot Allege That SanDisk's Allegedly Coercive Patent Infringement Suits Were "Sham" Or "Bad Faith Prosecution"................................................................................................4

          B.     PNY's Allegations Of "Coercion" Remain Implausible .............................5

    II.    PNY'S SECTION 2 FLASH MEMORY TECHNOLOGY MARKET ALLEGATIONS REMAIN DEFICIENT ................................................6

          A.     The FAC Fails To Adequately Allege That SanDisk Is A Monopolist Of Flash Memory Technology ..........................................................6

          B.     PNY Did Nothing To Address The Court's Holding That SanDisk Has Not Engaged In Any Antitrust Misconduct As A Technology Licensor.............................................................................................7

               1.     PNY's "Double Royalty" Allegations Continue To Fail As Matter of Law ...................................................................7

               2.     PNY's "Worldwide Royalty Payment" Allegations Continue To Fail As A Matter Of Law.....................................9

               3.     PNY's "Grant Back" Allegations Continue To Fail As A Matter Of Law ...............................................................10

               4.     PNY's Assertion That The License Is Anticompetitive Because It Is A Portfolio License Continues To Fail As A Matter Of Law ...............................................................10

          C.     The FAC Still Fails To Allege Harm To Competition In The Flash Memory Technology Market ...................................................13

    III.   PNY'S SECTION 2 CHIP MARKET ALLEGATIONS REMAIN DEFICIENT..........................................................................................13

          A.     SanDisk's Alleged Share Of The Chip Market Requires Dismissal Of PNY's Section 2 Attempted Monopolization Claim ...............................13

          B.     PNY Offers No New Alleged Misconduct To Support Its Section 2 Chip Market Claim ...................................................................14

          C.     PNY Does Not Adequately Allege That SanDisk Has Any Prospect of Monopolizing the Chip Market ..........................................15

    IV.   PNY'S NEW "TYING" CLAIM IS DEFICIENT AS A MATTER OF LAW .....16

i

V.   PNY'S NEW "VERTICAL" SECTION 1 CLAIMS ARE DEFICIENT AS A MATTER OF LAW ..................................................................................20

    A.   PNY Cannot Overcome The Ninth Circuit's Market Power Screen .........20

    B.   PNY's Section 1 Claims Fail For The Same Lack Of Antitrust Misconduct ..............................................................................................21

    C.   PNY Still Has Not Alleged Harm To Competition In Connection With Its New Section 1 Claims .................................................................22

VI.   PNY'S STATE LAW AND DECLARATORY JUDGMENT CLAIMS SHOULD BE DISMISSED ...............................................................................23

    A.   Because PNY's Federal Antitrust Claims Should Be Dismissed, PNY's Cartwright Act And § 17200 Claims Also Should Be Dismissed ...........................................................................................24

    B.   The Court Should Exercise Its Discretion And Decline Jurisdiction Over PNY's Declaratory Relief Act Claim ..............................................25

CONCLUSION ..............................................................................................................25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

TABLE OF AUTHORITIES

PAGE

**Cases**

*Apple Inc. v. Samsung Elecs. Co.*,
   2011 WL 4948567 (N.D. Cal. Oct. 18, 2011)......................................................................24

*Apple, Inc. v. Psystar Corp.*,
   586 F. Supp. 2d 1190 (N.D. Cal. 2008) ........................................................................17

*Applera Corp. v. MJ Research Inc.*,
   2004 WL 2377171(D. Conn. Sept. 29, 2004) ..........................................................17, 18

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).............................................................................................................3

*Automatic Radio Mfg. Co. v. Hazeltine Research, Inc.*,
   339 U.S. 827 (1950).....................................................................................................11, 13

*Blough v. Holland Realty, Inc.*,
   574 F.3d 1084 (9th Cir. 2009) .......................................................................................18

*Brantley v. NBC Universal, Inc.*,
   675 F.3d 1192 (9th Cir. 2012) ..................................................................16, 17, 18, 20

*Broadcom Corp. v. Qualcomm Inc.*,
   2006 WL 2528545 (D.N.J. Aug. 31, 2006), *aff'd in part and rev'd in part on other grounds*,
   501 F.3d 297 (3d Cir. 2007)...........................................................................................19

*Brulotte v. Thys Co.*,
   379 U.S. 29 (1964)............................................................................................................12

*Brunswick Corp v. Pueblo Bowl-O-Mat, Inc.*,
   429 U.S. 477 (1977)...........................................................................................................3

*Calculators Hawaii, Inc. v. Brandt, Inc.*,
   724 F.2d 1332 (9th Cir. 1983) .......................................................................................21

*Cargill, Inc. v. Monfort of Colorado, Inc.*,
   479 U.S. 104 (1986)...........................................................................................................3

*Cascade Health Solutions v. PeaceHealth*,
   515 F.3d 883 (9th Cir. 2008) .......................................................................................17

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Telephone Co.*,
   20 Cal. 4th 163 (1999) ...................................................................................................24

*Cole v. Sunnyvale*,
   2010 WL 532428 (N.D. Cal. Feb. 9, 2010) ..................................................................5

*Contech Stormwater Solutions, Inc. v. Baysaver Techs., Inc.*,
   534 F. Supp. 2d 616 (D. Md. 2008)...............................................................................22

*DocMagic, Inc. v. Ellie Mae, Inc.*,
   2011WL 871480 (N.D. Cal. Mar. 10, 2011 ..................................................... 24

*Eazypower Corp. v. Alden Corp*,
   2003 WL 22859492 (N.D. Ill. Dec. 2, 2003) ................................................. 22

*Fasugbe v. Willms*,
   2011 WL 2119128 (E.D. Cal. May 26, 2011) ................................................... 5

*Fisher v. Gilet Outillage*,
   530 F.3d 1063 (9th Cir. 2008) ...................................................................... 22

*Gini v. Las Vegas Metro. Police Dep't*,
   40 F.3d 1041 (9th Cir. 1994) ........................................................................ 23

*Globetrotter Software, Inc. v. Elan Computer Group, Inc.*,
   362 F.3d 1367 (Fed. Cir. 2004) ...................................................................... 22

*Government Emplees. Ins. Co. v. Dizol*,
   133 F.3d 1220 (9th Cir. 1998) ........................................................................ 25

*GP Indus., Inc. v. Eran Indus., Inc.*,
   500 F.3d 1369 (Fed. Cir. 2007) ................................................................. 4, 22

*Harbridge v. Schwarzenegger*,
   2011 WL 6960830 (C.D. Cal. Aug. 31, 2011) .................................................. 5

*Hull v. Brunswick Corp.*,
   704 F.2d 1195 (10th Cir. 1983) ...................................................................... 11

*Ill. Tool Works, Inc. v . Indep. Ink, Inc.*,
   547 U.S. 28 (2006) ......................................................................................... 16

*In re Certain Flash Memory Controllers, Drivers, Memory Cards, & Media Players & Prods.
   Containing Same*,
   2010 WL 1934754 (U.S. Int'l Trade Comm'n Apr. 2010) ........................... 9, 12

*In re Webkinz Antitrust Litig.*,
   695 F. Supp.2d 987 (N.D. Cal. 2010) .............................................................. 18

*In re Yarn Processing Patent Validity Litig.*,
   541 F.2d 1127 (5th Cir. 1976) ........................................................................ 12

*Indiana Grocery, Inc. v. Super Valu Stores, Inc.*,
   864 F.2d 1409 (7th Cir. 1989) ........................................................................ 14

*Ingels v. Westwood One Broad. Servs., Inc.*,
   129 Cal. App. 4th 1050 (2005) ....................................................................... 24

*Int'l Norcent Tech. v. Koninklijke Philips Elecs. N.V.*,
   2007 WL 4976364 (C.D. Cal. Oct. 29, 2007) ................................................. 10

*Jensen Enters. Inc. v. Oldcastle, Inc.*,
   2006 WL 2583681(N.D. Cal. Sept. 7, 2006) ................................................... 17

*Kendall v. Visa U.S.A., Inc.*,
   518 F.3d 1042 (9th Cir. 2008) ............................................................................. 2

*Krantz v. BT Visual Images*,
   89 Cal. App. 4th 164 (2001) ............................................................................. 24

*Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*,
   551 U.S. 877 (2007) ............................................................................. 20

*Lucas v. Citizens Commc'ns. Co.*,
   409 F. Supp. 2d 1206 (D. Haw. 2005) ............................................................................. 21

*Luckett v. Delpark, Inc.*,
   270 U.S. 496 (1926) ............................................................................. 25

*Matsushita Elecs. Corp. v. Loral Corp.*,
   974 F. Supp. 345 (S.D.N.Y. 1997) ............................................................................. 22

*McGlinchy v. Shell Chem. Co.*,
   845 F.2d 802 (9th Cir. 1988) ............................................................................. 6

*Minebea Co. v. Papst*,
   444 F. Supp. 2d 68 (D.D.C. 2006) ............................................................................. 7, 8, 17

*Monsanto Co. v. Scruggs*,
   342 F. Supp. 2d 568 (N.D. Miss. 2004) ............................................................................. 14

*Nero, AG v. MPEG LA, L.L.C.*,
   2010 WL 4878835 (C.D. Cal. Nov. 24, 2010) ............................................................................. 6

*Newcal Indus., Inc. v. Ikon Office Solution*,
   513 F.3d 1038 (9th Cir. 2008) ............................................................................. 21

*Orion Elec. Co. v. Funai Elec. Co.*,
   2002 WL 377541 (S.D.N.Y. Mar. 11, 2002) ............................................................................. 7

*Pac. Express, Inc. v. United Airlines, Inc.*,
   959 F.2d 814 (9th Cir. 1992). ............................................................................. 6

*Princo v. Int'l Trade Comm'n*,
   616 F.3d 1318 (Fed. Cir. 2010) ............................................................................. 25

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*,
   508 U.S. 49 (1993) ............................................................................. 4

*Pub. Serv. Comm'n. v. Wycoff Co.*,
   344 U.S. 237 (1952) ............................................................................. 25

*Rebel Oil Co. v. Atl. Richfield Co.*,
   51 F.3d 1421 (9th Cir. 1995) ............................................................................. passim

*Rick-Mik Enters. Inc. v. Equilon Enters., LLC*,
   532 F.3d 963 (9th Cir. 2008) ............................................................................. 17, 20

*Robert's Waikiki U-Drive, Inc. v. Budget Rent-A-Car Sys. Inc.*,
   732 F.2d 1403 (9th Cir. 1984) ............................................................................. 18, 19

*Rutman Wine Co. v. E. & J. Gallo Winery,*
    829 F.2d 729 (9th Cir. 1987) ................................................................................. 22

*Samsung Elecs. Co., Ltd. v. Panasonic Corp.,*
    No. C:10-3098 JSW, Dkt. 104 (N.D. Cal. Aug. 25, 2011) .......................................... 8

*Santa Cruz Med. Clinic v. Dominican Santa Cruz Hosp.,*
    1995 WL 853037 (N.D. Cal. Sept. 7, 1995) ..................................................... 18, 19

*Scripps Clinic v. Sup.Ct.,*
    108 Cal. App. 4th 917 (2003) ............................................................................. 24

*Shoppin' Bag of Pueblo, Inc. v. Dillon Cos.,*
    783 F.2d 159 (10th Cir. 1986) ............................................................................. 14

*Spectrum Sports, Inc. v. McQuillan,*
    506 U.S. 447 (1993) ............................................................................................. 4

*State of New York by Abrams v. Anheuser-Busch, Inc.,*
    811 F. Supp. 848 (E.D.N.Y. 1993) ....................................................................... 21

*Sunrise Med. HHG, Inc. v. AirSep Corp.,*
    95 F. Supp. 2d 348 (W.D. Pa. 2000) ................................................................... 11

*Tele Atlas N.V. v. NAVTEQ Corp.,*
    2008 WL 4809441 (N.D. Cal. Oct. 28, 2008) ........................................................ 15

*Telerate Sys., Inc. v. Caro,*
    689 F. Supp. 221 (S.D.N.Y. 1988) ....................................................................... 20

*Tex. Instruments, Inc. v. Cypress Semiconductor Corp.,*
    90 F.3d 1558 (Fed. Cir. 1996) ............................................................................. 12

*Tex. Instruments, Inc. v. Hyundai Elecs. Indus., Co.,*
    49 F. Supp. 2d 893 (E.D. Tex. 1999) ................................................................... 11

*Townshend v. Rockwell Int'l Corp.,*
    55 U.S.P.Q.2d 1011 (N.D. Cal. 2000) ......................................................... 10, 13, 15

*U.S. Philips Corp. v. Int'l Trade Comm'n,*
    424 F.3d 1179 (Fed. Cir. 2005) ........................................................................... 10

*USM Corp. v. SPS Techs.,*
    694 F.2d 505 (7th Cir. 1982) ............................................................................... 15

*William O. Gilley Enters., Inc. v. Atl. Richfield Co.,*
    588 F.3d 659 (9th Cir. 2009) ................................................................................. 3

*Zila, Inc. v. Tinnell,*
    502 F.3d 1014 (9th Cir. 2007) ............................................................................. 11

**Statutes**

28 U.S.C. § 1367 .................................................................................................... 23

1 | 28 U.S.C. § 1367(c)(3).................................................................................. 24

2 | California Business & Professions Code § 16727 ....................................... 23

3 | California Business & Professions Code § 17200 ................................. 23, 24

4 | **Other Authorities**

5 | Hovenkamp *et al.*, 1 IP and Antitrust § 25.2 ................................................ 10

6 | U.S. Dep't of Justice & Fed. Trade Comm'n,
 | *Antitrust Enforcement and Intellectual Property Rights: Promoting Innovation and*
7 | *Competition* (2007) ................................................................................ 11

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES**

**PRELIMINARY STATEMENT**

PNY's First Amended Complaint ("FAC") fails to cure the fundamental deficiencies that required dismissal of its original complaint.  The FAC drops many of the deficient claims pled in PNY's original complaint (*i.e.*, monopolization claims in the flash memory chip, systems and products markets; attempted monopolization claims in the flash memory systems and products markets; horizontal conspiracy and "overall scheme" claims; and a state law intentional interference claim).  But the claims carried over to the FAC from the original complaint, and PNY's new "tying" and "vertical" Sherman Act Section 1 claims, are also deficient and should be dismissed because they are based on allegations that fail to state an antitrust claim under any theory.

*First*, the FAC does nothing to address this Court's holding that PNY's alleged harm—having to perform the terms of PNY's license agreement with SanDisk (the "License")—does not constitute "antitrust injury."  *See* April 20, 2012 Order (Dkt. 50) at 20.  Like the original complaint, the FAC alleges at most that PNY entered into the License to resolve non-sham patent infringement litigation filed by SanDisk.  Moreover, PNY cannot simply walk away from its original allegations that it willingly entered the License (i) as a "favor" to SanDisk, and (ii) "because ... [it] was expected to have minimal impact on [PNY's] business."  Compl. (Dkt. 29) ¶¶ 70-71.  All claims of the FAC should be dismissed for this deficiency alone.

*Second*, the FAC's Sherman Act Section 2 claims remain deficient.  The FAC now makes clear that SanDisk is not a technology "monopolist," and effectively concedes that SanDisk cannot control innovation in the flash memory technology market.  In addition, the FAC does nothing to address the Court's holding that SanDisk's alleged licensing misconduct does not constitute antitrust misconduct.  Order at 15-19.  Moreover, like PNY's original complaint, the FAC does not allege any harm to the flash memory technology market.

*Third*, the FAC's attempted monopolization claim directed to the "chip" market remains deficient.  Indeed, according to the FAC, SanDisk (whose market share cannot, as a matter of law, be combined with that of other chip licensees) possesses a mere 19% share of the chip market, which is legally insufficient to establish an attempted monopolization claim.  Moreover, PNY has

1

1   not remedied its failure to adequately plead (i) antitrust misconduct, or (ii) that SanDisk can control

2   chip output or pricing.

3       *Fourth*, PNY's new "tying" claim fails as a matter of law.  Fundamentally, the FAC shows

4   that PNY was not "forced" to purchase chips from SanDisk as a condition for obtaining a license to

5   SanDisk's patents; to the contrary, the FAC alleges the availability of chips from other sources.

6   Also, as a matter of law, the FAC's allegation that purchases from Micron involve a higher royalty

7   rate to SanDisk, as compared to chip purchases made from SanDisk or its licensed chip competitors,

8   cannot establish an unlawful tie.  Such an arrangement is not a "forced" sale of SanDisk chips,

9   especially since PNY admits that it can also purchase chips from other sources without any

10  economic disadvantage.  Further, and equally dispositive, the FAC omits any factual allegations

11  sufficient to show any anticompetitive effect in the allegedly tied chip market as a result of

12  SanDisk's license terms.

13      *Fifth*, PNY's new "vertical" Sherman Act Section 1 claim is facially deficient.  It simply

14  retreads PNY's Section 2 allegations and attempts to cast them as "unreasonable restraints of trade"

15  in all of the alleged "markets" for flash memory technology, chips, systems and products.  But the

16  Section 1 flash memory technology market claim fails for the same reasons as the Section 2 claim.

17  The Section 1 claims relating to the downstream chip, system and products markets fail because

18  PNY has not alleged and cannot allege that (i) SanDisk possesses market power in these markets (a

19  threshold requirement in this Circuit), (ii) SanDisk engaged in any antitrust misconduct, or (iii)

20  SanDisk's conduct caused any cognizable injury to competition.

21      *Sixth*, PNY's Cartwright Act and § 17200 claims fail because its federal claims fail, and this

22  Court should dismiss PNY's claim for declaratory relief as a matter of law and discretion.

23      Since any further amendment would be futile, SanDisk respectfully requests that the Court

24  dismiss the FAC **with prejudice**.  *See, e.g., Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th

25  Cir. 2008) (affirming dismissal of amended complaint with prejudice where it failed to cure defects

26  of original complaint and further amendment would be futile).

27

28

1

## <u>ARGUMENT</u>

2    As this Court observed in dismissing the original complaint, Order at 6, under *Bell Atlantic*

3 *Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), PNY's pleading

4 "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

5 on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).   PNY's antitrust claims must also be

6 "'plausible' in light of basic economic principles." *William O. Gilley Enters., Inc. v. Atl. Richfield*

7 *Co.*, 588 F.3d 659, 662 (9th Cir. 2009) (citing *Twombly*, 550 U.S. at 556).  Further, to be entitled to

8 relief, PNY must do "more than [rely upon] labels and conclusions, [or] a formulaic recitation of the

9 elements of a cause of action." *Twombly*, 550 U.S. at 555.  A pleading's "'basic deficiency

10 should ... be exposed at the point of minimum expenditure of time and money by the parties and the

11 court.'" *Id.* at 558 (citations omitted) (alteration in original).

12    Applying these principles to the FAC, PNY's claims must be dismissed as a matter of law.

13 ## I.    <u>THE FAC STILL FAILS TO ALLEGE CAUSAL ANTITRUST INJURY</u>

14    In dismissing PNY's original complaint this Court found that PNY's alleged

15 "'injury' ... arises out of the payment of royalties to practice SanDisk's patents."  Order at 20.  The

16 Court held that "[b]ecause PNY has not adequately pled that it entered into the unfavorable license

17 with SanDisk as a result of anticompetitive conduct, or how it suffered antitrust injury based upon

18 the terms of the contract, it cannot rely on the terms of the contract to establish antitrust injury."

19 *Id.*[1]  The Court highlighted that, although PNY alleged it entered the License to end SanDisk's

20 patent infringement suit, PNY did not allege that SanDisk's lawsuit constituted "sham litigation" or

21 "bad faith prosecution."  *Id.* at 20 n.12.  PNY's FAC offers nothing to correct these threshold

22 failures to allege antitrust injury, which require dismissal of the FAC in its entirety.

23

24

25

---

26 [1] PNY continues to seek relief under Sections 4 and 16 of the Clayton Act.  FAC ¶ 13.  Under

27 either statute, a plaintiff must allege that it has suffered (Section 4) or faces the threat of (Section 16) antitrust injury, which is "'the type the antitrust laws were designed to prevent and that flows from that which makes defendants' acts unlawful.'"  *Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104,

28 113 (1986) (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)).

3

1   **A.    PNY Does Not And Cannot Allege That SanDisk's Allegedly Coercive Patent**
2         **Infringement Suits Were "Sham" Or "Bad Faith Prosecution"**

3       PNY attempts to avoid its original representations that it voluntarily entered the License as

4   an accommodation to SanDisk because the terms were "expected to have a minimal impact on its

5   business," *see* Compl. ¶¶ 71-72 (Dkt. 29), by deleting them from the FAC.  Instead, PNY focuses

6   on the purported coercive nature of SanDisk's 2007 patent infringement lawsuits.  FAC ¶¶ 95-116.

7   Thus, PNY alleges that, faced with the "dire economic threat" of patent infringement litigation, it

8   was forced to agree to contract terms that it now does not prefer.  *Id.* ¶¶ 105-07, 110-14.

9       PNY's unexplained shift in focus, however, still does not satisfy the antitrust injury

10  requirement since PNY still does not (and could not) allege that SanDisk's patent suits were sham

11  or brought in bad faith.  PNY refers to the "threat of never-ending, financially-ruinous patent

12  infringement litigation," *id.* ¶ 178; *see also id.* at ¶ 5, as "abusive," *id.* ¶ 107, but it does not even

13  attempt to allege the elements of sham or bad faith litigation.  *See Prof'l Real Estate Investors, Inc.*

14  *v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60-61 (1993) (litigation is immune from antitrust

15  scrutiny under the *Noerr-Pennington* doctrine unless it is "objectively baseless" and pursued in

16  subjective bad faith); *GP Indus., Inc. v. Eran Indus., Inc.,* 500 F.3d 1369, 1374-75 (Fed. Cir. 2007)

17  (plaintiffs alleging wrongful threats of litigation must satisfy *Professional Real Estate* standard).

18  PNY also does not allege that its flash memory products do not infringe SanDisk's patents or that it

19  does not require a license from SanDisk to compete in the alleged markets.

20      Accordingly, PNY effectively concedes the continuing infirmity of its pleading because

21  PNY's alleged injury is the result of perfectly appropriate hard-bargaining, and the lawful and

22  permitted assertion by SanDisk of its patent rights, and not any anticompetitive conduct.  *See* Order

23  at 7 ("The patent empowers the owner to exact royalties as high as he can negotiate with the

24  leverage of that [patent] monopoly ... [or] refuse to license an invention altogether." (internal

25  citation omitted)); *see also id.* at 19 ("'The law directs itself not against conduct which is

26  competitive, even severely so, but against conduct which unfairly tends to destroy competition

27  itself'") (quoting *Spectrum Sports, Inc. v. McQuillan,* 506 U.S. 447, 458 (1993)).

28

4

### B.    <u>PNY's Allegations Of "Coercion" Remain Implausible</u>

PNY also cannot walk away from the fact, as alleged in the original complaint, that it voluntarily entered into the License and that its claimed injury arises only because of changes in market conditions and its own business decisions. *See* Order at 8 ("[T]he gravamen of Plaintiff's Complaint arises from a change in market conditions and Plaintiff's current dissatisfaction with the [License]."). The FAC omits PNY's allegations in the original complaint that "PNY was willing to enter into the License *because ... [it] was expected to have minimal impact on [PNY's] business*," and that PNY was harmed by the terms of the License only later when it changed its business model from reseller to aggregator. Compl. ¶¶ 71-72 (emphasis added). Moreover, the FAC merely directly contradicts these earlier factual allegations with new conclusory allegations that SanDisk's patent enforcement presented a "dire economic threat" to PNY and similarly situated firms, and that PNY unwillingly "acceded to the License." FAC ¶¶ 110, 112, 114.

PNY cannot escape this inconsistency since the Court "may properly consider the plausibility of the FAC in light of the prior allegations." *Fasugbe v. Willms,* 2011 WL 2119128, at *5 (E.D. Cal. May 26, 2011); *see also Harbridge v. Schwarzenegger,* 2011 WL 6960830, at *7-8 (C.D. Cal. Aug. 31, 2011) (declining to accept the truth of an inconsistent amended allegation and using the originally pled facts in its analysis); *Cole v. Sunnyvale,* 2010 WL 532428, at *4 (N.D. Cal. Feb. 9, 2010) ("The court may also consider the prior allegations as part of its 'context-specific' inquiry based on its judicial experience and common sense to assess whether the Third Amended Complaint plausibly suggests an entitlement to relief, as required under *Iqbal*."). PNY clearly averred in its original complaint that it willingly entered the License. The FAC's assertion that SanDisk forced an unwilling PNY to sign the License is plainly at odds with PNY's original allegations, and the Court should reject PNY's poor attempt to rewrite history as to why PNY entered the License.

Even were the Court to excuse PNY's contradiction, the FAC contains no factual allegations suggesting that PNY's decision to enter the License resulted from unlawful coercion rather than from a voluntary business decision to enter a license PNY perceived would have minimal impact on its then-chosen business model. Indeed, PNY continues to allege that its CEO, Gadi Cohen, agreed

1  to enter the License because SanDisk's then-CEO, Dr. Harari, asked Mr. Cohen to "do him a favor

2  and sign the License," FAC ¶ 108, in part so that SanDisk could "publicize" the License.  *Id.* ¶ 109.

3      Thus, as with the original complaint, the injury alleged by PNY in the FAC does not

4  constitute "antitrust injury" because it either flows from the lawful hard-bargaining of a patent

5  owner *or* from PNY's purely voluntary business decision, not antitrust misconduct.  *See Nero, AG v.*

6  *MPEG LA, L.L.C.*, 2010 WL 4878835, at * 4 (C.D. Cal. Nov. 24, 2010) (contractual agreement with

7  undesirable terms "is not anti-competitive when entered into freely").

8  **II.    PNY'S SECTION 2 FLASH MEMORY TECHNOLOGY MARKET ALLEGATIONS**

9     **REMAIN DEFICIENT**

10     Notwithstanding the Court's thorough explanation of the relationship between the patent

11  laws and the antitrust laws, Order at 6-8, PNY again fails to allege any facts that could establish that

12  SanDisk unlawfully maintains or threatens to acquire monopoly power in the flash memory

13  technology market through its licensing practices.[2]

14     **A.    The FAC Fails To Adequately Allege That SanDisk Is A Monopolist Of Flash**

15        **Memory Technology**

16     In addressing PNY's original complaint, the Court held that PNY's allegation that "SanDisk

17  purports to own 100% of the United States patents in flash memory technology" supported "at least

18  the inference of SanDisk's total dominance of the upstream market."  Order at 11-12.  Such an

19  inference is no longer proper because the FAC now makes clear that SanDisk does not in fact own

20  100% of United States flash memory patents or control innovation in flash memory technology.

21     In the FAC, PNY alleges that "at least one other party competes in the flash memory

22  technology market," FAC ¶ 46; that "other companies, such as Micron, do have alternative flash

23  memory technology and related intellectual property portfolios," *id.* ¶ 63; that "Micron ... makes

24

25  _____

    [2]  To state a claim for monopolization under Sherman Act Section 2, a plaintiff must allege the

26  defendant's "(1) possession of monopoly power in the relevant market, (2) willful acquisition or
    maintenance of that power, and (3) causal antitrust injury."  *Pac. Express, Inc. v. United Airlines,*

27  *Inc.*, 959 F.2d 814, 817 (9th Cir. 1992).  In the alternative, PNY raises an attempted monopolization
    claim in the technology market, FAC ¶ 199, which requires: "(1) specific intent to control prices or

28  destroy competition; (2) predatory or anti-competitive conduct directed toward accomplishing that
    purpose; (3) a dangerous probability of success; and (4) causal antitrust injury."  *McGlinchy v. Shell*
    *Chem. Co.*, 845 F.2d 802, 811 (9th Cir. 1988).

DEFENDANT'S NOTICE OF MOTION, MOTION AND                    CASE NO.: C-11-04689 YGR
MEM. IN SUPPORT OF MOTION TO DISMISS

1    and sells alternative flash memory chips that do not incorporate the technology over which SanDisk

2    claims patent protection," *id.* ¶ 77; and, that the other competing chip sellers—Intel, Toshiba,

3    Samsung and Hynix—all cross-license their own patents to SanDisk, *id.* ¶¶ 51-56. These factual

4    allegations must be construed to show that SanDisk does not and cannot control output of flash

5    memory technology. Thus, SanDisk is not a monopolist, and there is no dangerous probability that

6    it will become one. This completely disposes of Count III of the FAC. *See Rebel Oil Co. v. Atl.*

7    *Richfield Co.*, 51 F.3d 1421, 1443 (9th Cir. 1995) (Section 2 claim failed where defendant's

8    competitors could expand output).[3]

9       **B.    PNY Did Nothing To Address The Court's Holding That SanDisk Has Not
             Engaged In Any Antitrust Misconduct As A Technology Licensor**
10

11      Count III also must be dismissed because PNY continues to assert that SanDisk improperly

12   maintains a technology monopoly through alleged conduct that the Court already deemed

13   insufficient to state a Section 2 claim.[4] *See* Order at 15-19.

14      **1.    PNY's "Double Royalty" Allegations Continue To Fail As Matter of Law**

15      The FAC alleges that SanDisk violates the patent exhaustion doctrine by collecting a royalty

16   on the sale of a flash memory chip twice: first when the chip is sold by its manufacturer, and second

17   when an aggregator sells the same chip after incorporating it into a flash memory systems product.

18   *See* FAC ¶¶ 59, 122-28. The Court held that PNY's original double royalty claim "failed to allege

19   anticompetitive conduct," explaining:

20          To the extent PNY believes SanDisk is charging a double royalty on its patents, PNY
            needs to set out its claim more clearly to state a Sherman Act claim. The Complaint
21          alleges that any firm manufacturing, assembling or selling flash memory devices,
            systems or products is practicing one of SanDisk's patents and thus must pay
22          SanDisk a royalty. The Complaint also alleges that the patent portfolio consists of
            1,400 patents. This suggests that SanDisk is not collecting a "double royalty," but
23

24   _____
     [3]  Although the FAC alleges that SanDisk "claims" to have 100% of the market for flash memory
25   technology in the United States, *see* FAC ¶¶ 45-47, SanDisk's subjective beliefs concerning its
     patent coverage are legally irrelevant. *See Minebea Co. v. Papst*, 444 F. Supp. 2d 68, 195, 218
26   (D.D.C. 2006) ("[Defendant's] views on the scope of its own patents . . . are irrelevant to this
     Court's market power analysis."); *Orion Elec. Co. v. Funai Elec. Co.*, 2002 WL 377541, at * 6-8
27   (S.D.N.Y. Mar. 11, 2002) (same). This is particularly true here, where PNY has included specific,
     contrary allegations in the FAC.

28   [4]  PNY's new tying claim does not cure this deficiency as addressed below. *See* Section IV, *infra.*

DEFENDANT'S NOTICE OF MOTION, MOTION AND                          CASE NO.: C-11-04689 YGR
MEM. IN SUPPORT OF MOTION TO DISMISS

1   rather enforcing its rights under the patent laws by collecting a separate royalty for a
2   different set of patent rights.  Accordingly, PNY has failed to allege anticompetitive
    conduct.

3   Order at 17 (citations omitted).  The FAC does not cure this deficiency.

4       As an initial matter, the double royalty allegations in the FAC are virtually identical to the

5   original complaint's deficient allegations.  *Compare* Compl. ¶¶ 77-79, 91-92, 94-95, *with* FAC ¶¶

6   59, 122-128.  PNY still alleges that any firm manufacturing, assembling or selling flash memory

7   chips, systems or products is practicing one of SanDisk's patents and thus must pay SanDisk a

8   royalty.  *Compare* Compl. ¶¶ 34-36, *with* FAC ¶¶ 44-46, 91.  PNY also continues to allege that

9   SanDisk possesses a large patent portfolio.  FAC ¶ 45 (increasing the size of SanDisk's patent

10  portfolio to 1700 patents).  As the Court correctly noted, these allegations "suggest[] that SanDisk is

11  not collecting a 'double royalty,' but rather enforcing its rights under the patent laws by collecting a

12  separate royalty for a different set of patent rights."  Order at 17.

13      In fact, the FAC confirms that SanDisk is collecting separate royalties on different sets of

14  patents rights.  PNY specifically alleges that SanDisk possesses patent claims covering flash

15  memory chip technology and *separate* patent claims covering flash memory systems technology.

16  FAC ¶ 197; *see also id.* ¶¶ 48, 50-54, 59, 63, 82-84.  PNY also alleges:

17          On its face, the PNY License purports to license only a limited set of patent claims,
            which are directed to the creation of USB flash memory *systems*, *i.e.*, *the*
18          *combination of a flash memory chip and controller*.  *The License does not purport*
            *to license to PNY the subset of patent claims directed toward flash memory chips,*
19          *and indeed purports to expressly exclude such claims*."

20  *Id.* ¶ 117 (emphasis added); *see also* FAC, Ex. A § 1.31 (defining "SanDisk Licensed Patent

21  Claims").  "The practice of charging royalties based on a percentage of the total price of a finished

22  product is a widely accepted method for calculating patent royalties where the final product

23  includes, but is not limited to, parts or components that are covered by other patents." *Samsung*

24  *Elecs. Co., Ltd. v. Panasonic Corp.,* No. C:10-3098 JSW, Dkt. 104 at 9 (N.D. Cal. Aug. 25, 2011).

25      Thus, as a matter of law, SanDisk's practice of collecting royalties on one set of patent

26  rights from flash memory chip manufacturers and also collecting royalties on a different set of

27  patent rights from aggregators on the sale of flash memory systems that contain flash memory chips

28  does not constitute an improper "double royalty."  *See id.*; *Minebea*, 444 F. Supp. 2d at 212 (finding

8

1  no "double royalty" where defendant collected royalties from its licensee and the licensee's

2  customers, but the royalties related to different patent rights and products).  Indeed, the License

3  states that PNY's royalty payments are "solely and completely directed" to "Licensee Licensed

4  Products," FAC, Ex. A § 5.2, which are defined to specifically exclude chips.  *Id.* § 1.12.  Thus, the

5  License avoids collecting a "double royalty" by engaging in field-of-use licensing that ensures

6  "system level" licensees, like PNY, pay royalties only on SanDisk's "system level" patent rights for

7  the sale of flash memory systems.  *See In re Certain Flash Memory Controllers, Drivers, Memory*

8  *Cards, & Media Players & Prods. Containing Same*, No. 337-TA-619, 2010 WL 1934754, at *83-

9  84 (U.S. Int'l Trade Comm'n Apr. 2010) (Final) (agreeing with SanDisk and ITC staff that "[t]he

10  royalties collected by SanDisk from the flash memory chip manufacturers pay for a different set of

11  patent rights than the royalties that SanDisk seeks to collect from Respondents in this

12  investigation….  [T]he evidence shows that that chip manufacturers and system manufacturers pay

13  for a different set of rights….  The evidence shows that the field of use and royalty provisions

14  specify that the type of product manufactured determines for which patents and rights royalties are

15  paid.  Accordingly, the undersigned finds that Respondents have not shown that SanDisk's

16  licensing policy results in the impermissible double payment of royalties for the same patents on the

17  same products.").

18      **2.    PNY's "Worldwide Royalty Payment" Allegations Continue To Fail As**
               **A Matter Of Law**
19

20       PNY's challenge to the License's worldwide royalty rate is also specious.  As an initial

21  matter, the FAC confirms that PNY manufactures *all* of its products in the United States.  FAC ¶ 11.

22  Thus, it is irrelevant how many foreign jurisdictions SanDisk holds patent rights in because

23  SanDisk's patent rights in the United States alone entitled it to receive royalties on *all* of PNY's

24  products covered by the License, regardless of where PNY's products are sold.  *See* 35 U.S.C. § 271

25  (stating "whoever without authority makes … any patented invention, within the United States, …

26  during the term of the patent therefor, infringes the patent.").  Accordingly, PNY's attack on the

27  License's worldwide royalty rate is without merit.

28       In addition, PNY continues to fail to allege that its royalty payments would be lower if

9

1  SanDisk were to license its patents on an individual, country-by-country or "single" royalty stream

2  basis.  As the Federal Circuit explained in an analogous context, there is no economic reason to

3  believe that such payments would be lower.  *See U.S. Philips Corp. v. Int'l Trade Comm'n*, 424

4  F.3d 1179, 1191 (Fed. Cir. 2005) ("It is entirely rational for a patentee who has a patent that is

5  essential to particular technology, as well as other patents that are not essential, to charge what the

6  market will bear for the essential patent and to offer the others for free.").

7          **3.     PNY's "Grant Back" Allegations Continue To Fail As A Matter Of Law**

8          PNY also continues to allege that "requiring licensees to grant back a cross-license" is

9  anticompetitive because it "reduce[s] the incentive for licensees to develop their own technological

10  solutions and patent portfolios."  FAC ¶¶ 137-38.  However, as the Court held in dismissing PNY's

11  original complaint:

12          There is nothing inherently illegal or anticompetitive about a grant-back provision in
            a patent license.  To show that a grant-back provision is unlawful, PNY must allege

13          facts that demonstrate a restraint on competition that violates the antitrust laws.

14  Order at 18.  This is particularly true where, as here, the grant-back is *non-exclusive* because such

15  provisions generally are ***procompetitive***.  *See, e.g.*, *Int'l Norcent Tech. v. Koninklijke Philips Elecs.*

16  *N.V.*, 2007 WL 4976364, at *2 n.18 (C.D. Cal. Oct. 29, 2007) ("Grantbacks can have

17  procompetitive effects, especially if they are nonexclusive[.]"), *aff'd*, 323 F. App'x 571 (9th Cir.

18  2009).[5]  PNY again "stops short of alleging that this licensing provision actually *has* stifled

19  innovation."  *See* Order at 18.  Indeed, PNY cannot plausibly do so because PNY is a customer in

20  the putative flash memory technology market, not a competitor.  FAC ¶ 43.

21          **4.     PNY's Assertion That The License Is Anticompetitive Because It Is A
                     Portfolio License Continues To Fail As A Matter Of Law**

22

23          In dismissing the original complaint, the Court confirmed that there is nothing inherently

24  anticompetitive about a portfolio license, such as SanDisk's License with PNY.  Order at 19 ("PNY

25  alleges that the license is anticompetitive because it requires a licensee to pay for a broad and

26  _____
    [5]  *See also Townshend v. Rockwell Int'l Corp.*, 55 U.S.P.Q.2d 1011, 1019 (N.D. Cal. 2000)
27  ("Generally, cross-licensing is considered a pro-competitive practice."); Herbert Hovenkamp *et al.*,
    1 IP and Antitrust: An Analysis of Antitrust Principles Applied to Intellectual Property Law § 25.2,
28  at 25-2 (2d ed. 2010) ("Non-exclusive grantback clauses are virtually always procompetitive.").

_____

10

1   unspecified patent portfolio, rather than specific, individual patents; and to pay royalties on

2   worldwide sales, which would include sales in geographic markets not covered by the patents.

3   [Complaint] ¶¶ 84-86.  The fact that PNY entered into a form license over which SanDisk was able

4   to negotiate more favorable terms does not constitute anticompetitive conduct for antitrust

5   purposes." (footnote omitted)).  This is well-established as a matter of law, particularly where, as

6   here, the License is non-exclusive.  *See Automatic Radio Mfg. Co. v. Hazeltine Research, Inc.*, 339

7   U.S. 827, 832-34 (1950) (non-exclusive portfolio license could not "restrain[] competition beyond

8   the legitimate grant of the patent").  In fact, portfolio licenses have been recognized to be

9   procompetitive.[6]  The FAC, however, continues to attack improperly the License as inherently

10  anticompetitive because it is a portfolio license, rather than a license to specific patents.

11          *First*, PNY alleges that "[b]y forcing licensees to license its entire portfolio of patents,

12  instead of specific patents, SanDisk is able to and does charge post-expiration royalties." FAC ¶ 134.

13  This theory, however, is foreclosed by *Zila, Inc. v. Tinnell*, 502 F.3d 1014 (9th Cir. 2007), which

14  held that, in the context of a patent portfolio license, "the ability to exact royalties runs to the last of

15  the patents providing monopoly protection" even where the parties did not know when the last

16  patent would expire when entering into the agreement.  *Id.* at 1026.  Here, the FAC identifies only

17  three of the 1,700 patents in SanDisk's portfolio as having allegedly expired.  FAC ¶ 134.  There is

18  also no requirement that a patent portfolio royalty rate diminish as patents included in the portfolio

19  expire.  *See Sunrise Med. HHG, Inc. v. AirSep Corp.*, 95 F. Supp. 2d 348, 458 (W.D. Pa. 2000)

20  ("[T]he royalty rate need not diminish as patents included in a package license expire, as long as the

21  licensee is not coerced.").[7]  To the contrary, because "[a] patent empowers the owner to exact

---

22

23  [6]  *See Tex. Instruments, Inc. v. Hyundai Elecs. Indus., Co.*, 49 F. Supp. 2d 893, 900-01 (E.D. Tex.
    1999) (describing "widely used" practice of granting portfolio licenses as procompetitive because it

24  allows licensor and licensees to "avoid the costly and inefficient endeavor of a patent-by-patent
    licensing scheme"); U.S. Dep't of Justice & Fed. Trade Comm'n, *Antitrust Enforcement and*

25  *Intellectual Property Rights: Promoting Innovation and Competition* at 8 (2007), available at
    http://www.justice.gov/atr/public/hearings/ip/222655.pdf  ("Portfolio cross licenses . . . can help

26  solve the problems created by . . . overlapping patent rights … by removing the need for patent-by-
    patent licensing, thus reducing transaction costs for licensees . . . .  At the same time, portfolio cross

27  licenses . . . preserve the financial incentives for inventors to commercialize their existing
    innovations and undertake new, potentially patentable R&D.").

28  [7]  *See also Hull v. Brunswick Corp.,* 704 F.2d 1195, 1203 (10th Cir. 1983) ("The lack of diminution
                                                                                          *(cont'd)*

DEFENDANT'S NOTICE OF MOTION, MOTION AND                                    CASE NO.: C-11-04689 YGR
MEM. IN SUPPORT OF MOTION TO DISMISS

1  royalties as high as he can negotiate with the leverage of that monopoly," *Brulotte v. Thys Co.*, 379

2  U.S. 29, 33 (1964), the royalty rate on a patent portfolio may escalate as patents included in the

3  portfolio expire.  *See In re Yarn Processing Patent Validity Litig.*, 541 F.2d 1127, 1141-42 (5th Cir.

4  1976) (holding provision that escalated royalties for one patent in package after expiration of

5  another patent did not illegally extend life of first patent).

6      *Second*, PNY challenges SanDisk's procompetitive portfolio licensing, *see* n. 7, *supra*, by

7  alleging that "[b]y forcing licensees to license a broad portfolio of patents, instead of specific

8  patents, SanDisk is able to charge royalties on invalid patents."  FAC ¶ 135.  PNY does not allege

9  that any patent in SanDisk's 1,700-patent portfolio was invalid or believed to be invalid by either

10  PNY or SanDisk when they executed the License; PNY thus cannot rely on this "invalid patent"

11  theory to support its claim of wrongful coercion.  Rather, PNY's theory is based on its allegation

12  that after the License was executed, the "Wisconsin District Court and/or the ITC found," among

13  other things, "that [SanDisk's] '011 Patent was invalid for obviousness[.]"  FAC ¶ 106.  PNY's

14  carefully crafted "and/or" allegation is blatantly misleading.  The ITC, not the Wisconsin District

15  Court, addressed the alleged validity of the '011 Patent, *see In re Certain Flash Memory

16  Controllers*, 2010 WL 1934754, at *75, and the ITC's ruling is not binding.  *Tex. Instruments, Inc. v.

17  Cypress Semiconductor Corp.*, 90 F.3d 1558, 1569 (Fed. Cir. 1996).  PNY's "invalid patent" theory

18  is therefore deficient as a matter of law.  Moreover, even if a SanDisk patent included in the

19  portfolio were found invalid, this would not render the License anticompetitive, *cf. Zila*, 502 F.3d at

20  1023, and here again PNY has not alleged facts even suggesting the invalidity of one of SanDisk's

21  portfolio patents would have any adverse effect on competition.

22      *Third*, PNY alleges that "by forcing licensees to license a broad portfolio of patents, instead

23  of specific patents, SanDisk is able to charge royalties on [three] patents that have been adjudicated

24  not to be infringed."  FAC ¶ 136.  As an initial matter, these noninfringement findings are the

25  subject of a pending appeal and are not final.  *SanDisk v. Kingston*, No. 2011-1346 (Fed. Cir.).

26

27  _____
   *(cont'd from previous page)*
   in royalty rate for the use of [one patent] without another and the provisions for termination do not

28  of themselves establish coercion." (citations omitted) (alteration in original)).

12

1   Moreover, even if the findings were to be affirmed, it is not anticompetitive for a patentee to license

2   its patents on a portfolio-wide basis and charge royalties based on a percentage of the licensee's

3   total sales, regardless of whether the licensee uses all (or even any) of the licensor's patents.  *See*

4   *Automatic Radio Mfg. Co.*, 339 U.S. at 834 ("Petitioner cannot complain because it must pay

5   royalties whether it uses Hazeltine patents or not.").

6   **C.    The FAC Still Fails To Allege Harm To Competition In The Flash Memory**
7   **Technology Market**

8          The only misconduct alleged by PNY that can affect competition in the flash memory

9   technology market is the License's non-exclusive "grant-back" provision.  PNY has not, however,

10  alleged that the grant-back has stifled innovation, thereby harming competition in flash memory

11  technology, and it cannot plausibly do so given that PNY and other aggregators are not alleged to be

12  innovators.  As with the original complaint, the FAC "fails to relate [SanDisk's] conduct to the

13  maintenance of [its] legally obtained monopoly of the patented technology."  Order at 17.  For this

14  reason as well, Count III of the FAC should be dismissed.  *See Townshend*, 55 U.S.P.Q.2d at 1022

15  (dismissing Section 2 claim where plaintiff did not claim alleged misconduct "prevents the

16  development of proprietary technology that could otherwise be developed").

17  **III.   PNY'S SECTION 2 CHIP MARKET ALLEGATIONS REMAIN DEFICIENT**

18         Count IV of the FAC seeks to allege an attempted monopolization claim relating to the chip

19  market.  In light of the FAC's allegation that SanDisk possesses only a 19% share of the worldwide

20  market, it is implausible (indeed, absurd) that SanDisk has a dangerous probability of monopolizing

21  the chip market, a necessary prerequisite for this claim to survive dismissal.

22  **A.    SanDisk's Alleged Share Of The Chip Market Requires Dismissal Of PNY's**
23  **Section 2 Attempted Monopolization Claim**

24         Even assuming consideration of worldwide market shares is relevant for present purposes,

25  SanDisk's alleged 19% share of the worldwide chip market, FAC at 17, Table 3, dooms Count IV at

26  the outset.[8]  *See Rebel Oil,* 51 F.3d at 1438 (with regard to attempted monopolization, "most cases

27  _____

28  [8]  PNY's allegations regarding SanDisk's *worldwide* share of chip revenues are wholly irrelevant
    because they do not address SanDisk's share in the alleged relevant market – *i.e.*, for chips in the
    *(cont'd)*

DEFENDANT'S NOTICE OF MOTION, MOTION AND          CASE NO.: C-11-04689 YGR
MEM. IN SUPPORT OF MOTION TO DISMISS

1  hold that a market share of 30 percent is presumptively insufficient to establish the power to control

2  price") (citations omitted).

3        To overcome this fatal defect, PNY seeks to attribute to SanDisk ***Toshiba's*** share of the

4  flash memory chip output from SanDisk's joint venture with Toshiba (*i.e.*, 27% of worldwide

5  output).   FAC ¶ 68 & Table 3.   But PNY does not allege—even in a conclusory manner—that

6  SanDisk controls Toshiba's chip output or pricing.   There is therefore no basis for aggregating the

7  Toshiba joint venture's market share with SanDisk's.[9]

8        PNY's attempt to combine SanDisk's share with other competing chip manufacturers'

9  shares is equally misguided.   As the Ninth Circuit has held, "[t]o pose a threat of monopolization,

10  one firm *alone* must have the power to control market output and exclude competition."   *Rebel Oil*,

11  51 F.3d at 1443; *see also Indiana Grocery, Inc. v. Super Valu Stores, Inc.*, 864 F.2d 1409, 1416 (7th

12  Cir. 1989) ("Section 2 ... does not govern single-firm anticompetitive conduct aimed only at

13  creating an oligopoly.").   PNY does not allege that, regardless of whether Micron remains in the

14  market, SanDisk *alone* threatens to acquire a monopolistic hold on the chip market.[10]

15      **B.**    **PNY Offers No New Alleged Misconduct To Support Its Section 2 Chip Market**

16           **Claim**

17        The alleged misconduct underlying PNY's attempt to monopolize claims directed to the chip

18  market is no different from the insufficiently pled conduct related to its Section 2 claims directed to

19  the technology market.   Nor does PNY even allege that SanDisk's license agreements with other

20  chip manufacturers are anticompetitive.   The only alleged misconduct in the FAC that purportedly

21

22  _____
   *(cont'd from previous page)*

23  *United States.*   FAC ¶ 93.   *See Shoppin' Bag of Pueblo, Inc. v. Dillon Cos.*, 783 F.2d 159, 165 (10th Cir. 1986) (affirming district court's exclusion of evidence of market share outside of relevant market on grounds that such evidence was irrelevant to establish market share in relevant market).

24  [9]   The Ninth Circuit has held that "aggregation of market shares of several rivals is justified if the

25  rivals are alleged to have conspired to monopolize."   *Rebel Oil*, 51 F.3d at 1437.   PNY did not attempt to replead in the FAC its dismissed conspiracy claim involving SanDisk and Toshiba.   *See* Order at 20-21.

26  [10]   PNY's attempt to impute SanDisk's chip competitors' shares to SanDisk because they are

27  SanDisk licensees, FAC ¶¶ 63, 69, fails as a matter of law.   *See Monsanto Co. v. Scruggs*, 342 F. Supp. 2d 568, 583 (N.D. Miss. 2004) (holding that shares of the defendant's biotechnology

28  licensees could not be attributed to the defendant for purposes of a Section 2 claim).

1  causes harm in the chip market is SanDisk's allegedly "punitive" 8% royalty imposed on licensees

2  that purchase chips from Micron.  FAC ¶¶ 151-57, 214.  But, even assuming that SanDisk imposes

3  a royalty rate that discriminates against licensees that purchase chips from Micron, such a practice

4  does not constitute antitrust misconduct.  *See USM Corp. v. SPS Techs.*, 694 F.2d 505, 512 (7th Cir.

5  1982) ("[T]here is no antitrust prohibition against a patent owner's using price discrimination to

6  maximize his income from the patent.").

7          **C.**    **PNY Does Not Adequately Allege That SanDisk Has Any Prospect of**
8                 **Monopolizing the Chip Market**

9         PNY's attempted monopolization claim as respects the chip market also fails because it does

10  not adequately allege that SanDisk has the ability to control output or price of chips, and therefore

11  the prospect of attaining monopoly power.  *See Rebel Oil*, 51 F.3d at 1441 (describing "[t]he ability

12  to control output and prices" as "the essence of market power").  The Court previously held that

13  PNY failed to sufficiently allege that SanDisk has the power to control prices in the chip market,

14  Order at 12-13, and this deficiency is not cured by the FAC.

15         Here, again, PNY fails adequately to plead that SanDisk has, or will attain, the ability to

16  control the output or pricing of other chip manufacturers.  In similar technology licensing cases,

17  courts have recognized that a patentee that licenses its technology cannot control its licensees'

18  output in a downstream product market.  *See Tele Atlas N.V. v. NAVTEQ Corp.*, 2008 WL 4809441,

19  at *16-17 (N.D. Cal. Oct. 28, 2008).  In *Tele Atlas*, the antitrust plaintiff alleged that the defendant

20  exploited its technology monopoly power (covering certain map-related technologies) to force

21  plaintiffs also to license the defendant's map databases.  *See id.* at *6-7.  The court rejected the

22  argument that the defendant could possess market power in patented map technologies because it

23  had previously licensed those technologies to other manufacturers.  *See id.* at *16.  Specifically, the

24  court concluded that "once [the defendant] entered into its form patent license agreement with a

25  device manufacturer, it lost the power to increase price or reduce output over that licensee, and

26  cannot be said to possess market power."  *Id.*; *see also Townshend*, 55 U.S.P.Q.2d at 1021

27  (dismissing attempted monopolization claim where plaintiff alleged that the patentee defendant held

28  a 50% share of the downstream product market and that there were barriers to entry, but failed to

15

1   allege that the defendant could control its competitors' output).

2       Indeed, PNY continues to allege that there are periods of oversupply in chip production,

3   which drive down chip prices and create opportunities for aggregators to acquire chips at lower

4   costs.   FAC ¶¶ 31-34.   These periods of oversupply and the resulting price decreases are

5   inconsistent with any suggestion that SanDisk currently exercises, or will acquire, control over

6   output or pricing of chips.[11]

7   **IV.   PNY'S NEW "TYING" CLAIM IS DEFICIENT AS A MATTER OF LAW**

8       Count I of the FAC attempts to allege an unlawful tying arrangement under § 1 of the

9   Sherman Act and § 3 of the Clayton Act pursuant to both *per se* and rule of reason theories.   FAC

10  ¶¶ 172-86.   Specifically, PNY alleges that SanDisk tied its patented flash memory technology (the

11  "tying product") to the sale of flash memory chips sold by SanDisk and SanDisk's licensees (the

12  "tied product").   *Id.* ¶ 175; *see also id.* ¶¶ 117-21.   PNY's allegations fail as a matter of law.

13      A tying arrangement arises where a supplier agrees to sell a product (the "tying product"),

14  but only on the condition that the buyer also purchases a different ("tied") product.   *See Brantley v.*

15  *NBC Universal, Inc.*, 675 F.3d 1192, 1199 (9th Cir. 2012).   But to allege a tying claim under

16  Clayton Act Section 3, the tying and tied products must both be tangible goods; where, as here, the

17  alleged tying product is patents, no claim under that statute is stated.   *See, e.g., Tele Atlas N.V. v.*

18  *Navteq Corp.*, 397 F. Supp. 2d 1184, 1192-93 (N.D. Cal. 2005).   Further, where the tying product in

19  which the defendant is alleged to have market power is a patent or patented product, there is no *per*

20  *se* claim under Sherman Act Section 1.   *See Ill. Tool Works, Inc. v . Indep. Ink Inc.*, 547 U.S. 28, 42

21  (2006).   Accordingly, to the extent PNY seeks to allege a claim under Clayton Act Section 3 or a

22  *per se* theory under Sherman Act Section 1, its claim must be dismissed.

23      Further, to establish an unlawful tying arrangement under the rule of reason, a plaintiff must

24  ---

[11]   PNY alleges that SanDisk's aggregator licenses have made the price of chips decline at a slower
25  rate than "Moore's law would predict," FAC ¶¶ 158-59, offering a "logarithmic regression" that
    purports to establish the point, *id.* ¶¶ 160-61.   Not only are such *ipse dixit* allegations inherently
26  speculative in their own right, they also suffer from the logical fallacy of "*post hoc ergo propter*
    *hoc*," *i.e.*, the specious assertion that if "A" follows "B," then "B" caused "A" to happen.   PNY
27  must allege a factual basis for any such causal connection, especially in the face of this Court's
    earlier holding that, in the downstream markets, SanDisk's collection of royalties "do[es] not
28  support the claim that SanDisk has the power *to control* prices."   Order at 12-13 (citation omitted).

1   show that it was "forced" or "coerced" as a result of the defendant's market power in the alleged

2   tying product market to purchase a tied product, which in turn harmed competition in the market for

3   the tied product. *See Brantley*, 675 F.3d at 1199. Thus, market power in the alleged tying market is

4   a prerequisite to establishing an unlawful tying arrangement. *See Ill. Tool Works Inc.*, 547 U.S. at

5   46. As discussed above, PNY has failed to adequately plead that SanDisk has market power in the

6   alleged tying market. *See* Section II, *supra*.[12] This pleading deficiency alone renders PNY's tying

7   claim irremediably deficient.[13]

8       The FAC must also be dismissed because it fails to allege that PNY was in any way

9   "forced" or "coerced" to purchase the alleged tied product (chips from SanDisk or its licensees) as a

10  condition to obtaining a license from SanDisk, or that any cognizable injury in the tied market has

11  or can occur.

12      *First*, the FAC does not allege that SanDisk required any licensee of its flash memory

13  patents to purchase SanDisk flash memory chips as a condition to obtaining the license. Indeed, the

14  FAC alleges that PNY and other purchasers remained free to purchase flash memory chips from

15  SanDisk's licensees, *i.e.,* Intel, Hynix, Samsung and Toshiba, as well as from Micron. Together,

16

---

17  [12]  PNY's conclusory allegations of high barriers to entry created by SanDisk's patent rights, *e.g.,*
    FAC ¶ 62, do not cure this pleading deficiency. *See Rick-Mik Enters. Inc. v. Equilon Enters., LLC*,
18  532 F.3d 963, 973 (9th Cir. 2008) ("conclusory allegation that [defendant's] intellectual property
    rights [] confer market power" not sufficient to avoid dismissal); *see also Minebea*, 444 F. Supp. 3d
19  at 217 (rejecting "[t]he concept of having impermissible market power in a 'technology market'
    consisting merely of one's own patents"). In addition, as previously discussed, PNY's allegation
20  that Micron, which is unlicensed by SanDisk, possesses its own "alternative" flash memory
    technology and patents, FAC ¶ 63, and that Intel, Samsung, Hynix and Toshiba all cross-license
21  flash technology to SanDisk, FAC ¶¶ 51-56, undermines the conclusory allegation that SanDisk
    possesses market power in the technology market. *See Apple, Inc. v. Psystar Corp.*, 586 F. Supp.
22  2d 1190, 1198 (N.D. Cal. 2008) (in general, company's own products do not comprise a relevant
    market). PNY's allegation that Micron's share of the flash memory chip market is approximately
23  10%, FAC ¶ 63, is of no moment; it says nothing of Micron's competitive position in the upstream
    technology market.

24  [13]  PNY's tying claim is further fatally deficient because it fails to allege, as required, that
    SanDisk's patented technology and chips that are subject to such patents are two separate products.
25  *See Cascade Health Solutions v. PeaceHealth*, 515 F.3d 883, 913 (9th Cir. 2008); *cf.* FAC ¶ 181.
    *See also Jensen Enters. Inc. v. Oldcastle, Inc.*, 2006 WL 2583681, at *5 (N.D. Cal. Sept. 7, 2006)
26  (no separate products where it was necessary to access defendant's landline network (the alleged
    tying product) in order to use defendant's vault (the alleged tied product)); *Applera Corp. v. MJ*
27  *Research Inc.*, 2004 WL 2377171, at *1 (D. Conn. Sept. 29, 2004) (no separate products where
    PCR process patent right, the alleged tying product, was the same as the "authorized" patented
28  thermal cycler, the alleged tied product).

DEFENDANT'S NOTICE OF MOTION, MOTION AND                    CASE NO.: C-11-04689 YGR
MEM. IN SUPPORT OF MOTION TO DISMISS

1   these chip suppliers, according to the FAC, sold more than 80% of chips in the worldwide market.

2   FAC ¶ 69 & Table 3.  Moreover, as previously discussed, the FAC does not (and could not) allege

3   that SanDisk had any control over the selling decisions of these other chip competitors, or any

4   coordination between and among them and SanDisk.  Where a purchaser is able to purchase the tied

5   product *from a source other than the defendant*, including an authorized source such as SanDisk's

6   licensees, the coercion or forcing required to establish a tying claim does not exist.  *See Robert's*

7   *Waikiki U-Drive, Inc. v. Budget Rent-A-Car Sys. Inc.*, 732 F.2d 1403, 1407 (9th Cir. 1984) (no

8   coercion where consumers could purchase the tied product from sources other than defendant); *In re*

9   *Webkinz Antitrust Litig.*, 695 F. Supp.2d 987, 997-98 (N.D. Cal. 2010) (same); *Santa Cruz Med.*

10  *Clinic v. Dominican Santa Cruz Hosp.*, 1995 WL 853037, at *12 (N.D. Cal. Sept. 7, 1995)

11  (purchasers not expressly required to purchase one service in order to purchase another).  Simply

12  put, PNY and others could obtain a license from SanDisk for SanDisk's patented technology and

13  purchase chips from SanDisk or other suppliers in the alleged market.  This renders PNY's tying

14  claim incurably deficient.  *See Applera Corp.*, 2004 WL 2377171, at *2 ("[T]he [license agreement]

15  does not restrict the choices of the end user, because it does not determine which thermal cycler

16  machines are available on the market, nor does it require end users to purchase a particular thermal

17  cycler machine.").

18          *Second,* as a matter of law and fact, that PNY is subject to a lower royalty rate for chip

19  purchases from SanDisk or its licensees than for chip purchases made from Micron does not

20  establish that purchasing chips from SanDisk or its chip cross-licensees is the only viable economic

21  option for chip customers like PNY.  At best, PNY alleges that if it buys chips from Micron, the

22  price it has to pay to SanDisk in the form of a royalty for SanDisk's technology is increased.  *See,*

23  *e.g.,* FAC ¶¶ 59, 119.  But the Ninth Circuit in *Brantley* made clear that enhancing the price of the

24  *tying* product (here SanDisk's technology) does not constitute the "force" necessary to state a tying

25  claim.  *See Brantley*, 675 F.3d at 1199 (citing *Blough v. Holland Realty, Inc.*, 574 F.3d 1084, 1088

26  (9th Cir. 2009)).  Moreover, PNY cannot escape its allegations that confirm that it and other chip

27  purchasers can buy chips from Intel, Hynix, Toshiba and Samsung, and face no increased price for

28  the tying product.

1    Alternatively, PNY's tying allegations may be considered as establishing nothing more than

2    a discount if PNY (and others) buys chips from SanDisk or its licensees.  This is also a legally

3    deficient basis for a tying claim.  *See Robert's Waikiki U-Drive*, 732 F.2d at 1407.

4        *Broadcom Corp. v. Qualcomm Inc.*, 2006 WL 2528545 (D.N.J. Aug. 31, 2006), *aff'd in part*

5    *and rev'd in part on other grounds*, 501 F.3d 297 (3d Cir. 2007), is particularly instructive in this

6    regard.  There, Broadcom alleged that Qualcomm required its patent technology licensees to "pay

7    multi-million dollar licensing fees unless they agree[d] to purchase Qualcomm chipsets

8    exclusively" and that Qualcomm offered discounts "on the use of only Qualcomm chipsets."  *Id.* at

9    *2.  Further, like PNY here, Broadcom alleged that Qualcomm's more beneficial license terms

10   "substantially raise[d] competitors' costs of selling and marketing[] chipsets" and "strongly

11   discourage[d] chipset buyers from dealing with Qualcomm's competitors."  *Id.*; *cf.* FAC ¶¶ 118-120.

12   These allegations were held insufficient to establish the requisite coercion or forcing for an

13   unlawful tying claim.  Specifically, that court found that Qualcomm had not conditioned the

14   availability of licenses to its patents to the purchase of its chipsets, but instead only conditioned the

15   availability of a discount on whether a purchaser bought its chipsets, and held that "such an

16   incentive[ ] does not amount to a forced sale."  2006 WL 2528545 at *14-15.[14]

17       The conclusion reached in *Broadcom* is compelled to a greater extent here.  In that case, the

18   allegation was that Qualcomm's chipsets could only be purchased *from it* in order for Broadcom to

19   benefit from the advantageous pricing.  *Id.* at *13.  Here, in contrast, PNY (and others) can purchase

20   chips at no cost disadvantage from SanDisk's competitors, which are licensed sellers of chips.  FAC

21   ¶¶ 59,119.  Moreover, any cost disadvantage resulting from purchasing chips from Micron arises

22   only based on the legitimate exercise of SanDisk's patent rights, as previously recognized by the

23   Court, Order at 20 & n.12, and, as a matter of law, does not establish purchases from SanDisk as the

24   only economically viable alternative available to PNY.

25       *Finally*, PNY fails to allege, as required, that competition in the alleged tied product market

---

[14]  *See also Santa Cruz Med. Clinic*, 1995 WL 853037, at *13 (pricing provision that provided
economic benefit to those who purchased physician services through the defendant's plan did not
constitute an unlawful tie, since the physician services could be purchased from others, albeit at a
potentially less advantageous price).

1  (for the sale of chips) has been injured and substantially foreclosed as the result of SanDisk's

2  alleged tying conduct.  *See Brantley*, 675 F.3d at 1199; *Rick-Mik Enters.*, 532 F.3d at 971.  As the

3  Ninth Circuit in *Brantley* recently confirmed, "tying arrangements may promote rather than injure

4  competition."  *Brantley*, 675 F.3d at 1200.  According to the FAC, that is exactly what SanDisk has

5  achieved by virtue of its licensing activities; it has facilitated the downstream availability of over

6  70% of flash memory chips, which its licensees sell in competition with SanDisk.  Indeed, certain

7  of these competitors—*e.g.,* Samsung and Toshiba—are alleged to have greater shares of the alleged

8  tied market than SanDisk.  FAC ¶ 69.  Moreover, as the Court held previously, to the extent that

9  SanDisk is able to obtain the additional royalty based on chip purchases from unlicensed sources,

10 that is the result of its legitimate patent rights and is not an anticompetitive effect.  Order at 19.  *See*

11 *also Telerate Sys., Inc. v. Caro*, 689 F. Supp. 221, 235 (S.D.N.Y. 1988) ("[E]xploitation of market

12 power to increase the price of the tying product is not necessarily contrary to the competitive goal

13 sought by the Sherman Act, because, presumably, the higher price is justified by some discernible

14 competitive advantage that the tying product has over other products.").

## V.  PNY'S NEW "VERTICAL" SECTION 1 CLAIMS ARE DEFICIENT AS A MATTER OF LAW

17        PNY's FAC drops any allegation or suggestion that flash memory chip manufacturers are

18 engaged in an illegal conspiracy.  In its place, PNY claims that SanDisk's License with PNY, and

19 "comparable" licenses with other aggregators, FAC ¶ 188, constitute unreasonable restraints of

20 trade in each of the flash memory technology, chip, systems and products market, *id.* ¶ 191.

21 Because PNY's "catch-all" Section 1 claims challenge "vertical" agreements between SanDisk and

22 its licensees (as opposed to "horizontal" agreements between SanDisk and its competitors), these

23 claims are analyzed under the rule of reason.  *See Leegin Creative Leather Prods., Inc. v. PSKS,*

24 *Inc.*, 551 U.S. 877, 898-99 (2007).

### A.    PNY Cannot Overcome The Ninth Circuit's Market Power Screen

26        All of PNY's Section 1 allegations in the downstream markets fail because PNY does not

27 adequately allege that SanDisk possesses market power in these markets.

28        It is well-established in the Ninth Circuit that a rule of reason claim under Section 1 cannot

be established absent the defendant's possession of market power in the relevant market.  *See Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1044 (9th Cir. 2008) ("In order to state a valid claim under the Sherman Act, a plaintiff must allege that the defendant has market power within a 'relevant market.'").  Here, on the face of the FAC, there is no question that SanDisk lacks market power in any putative relevant market for chips, systems or products.[15]  Indeed, SanDisk's alleged share of the worldwide chip market is only 19%, FAC ¶ 69, Table 3, and its share of the products market is allegedly 34-40%, *id.* ¶ 86.  These shares fall well below the threshold that suggests market power.  *See Lucas v. Citizens Commc'ns Co.,* 409 F. Supp. 2d 1206, 1220 (D. Haw. 2005) (a 65% market share is required to establish a prima facie case of market power).[16]

With regard to flash memory systems, PNY acknowledges that SanDisk "does not control the system market in terms of market share," but instead argues that SanDisk can force all system customers to license its technology, and therefore, can exclude competitors in that market.  FAC ¶ 82.  But, as this Court previously held with regard to all three downstream markets, SanDisk's ability to extract royalties "do[es] not support the claim that SanDisk has the power *to control* prices and thus, PNY has not alleged facts to show market power directly."  Order at 12-13 (citation omitted).  PNY offers no allegations to overcome this prior holding supporting dismissal.

## B.    PNY's Section 1 Claims Fail For The Same Lack Of Antitrust Misconduct

Because PNY's Section 1 claims in the flash memory technology, chip and systems markets are premised on the same alleged misconduct that was inadequately pled for purposes of its Section 2 claims, *see* Sections II.B & IV., *supra*, these Section 1 claims also fail as a matter of law.  *See Calculators Hawaii, Inc. v. Brandt, Inc.,* 724 F.2d 1332, 1339 (9th Cir. 1983) ("[S]ection 2 simply measures individual conduct 'against the same "reasonableness" standard governing concerted and contractual activity under § 1.'" (citation omitted)).

---

[15]  PNY also fails to allege that SanDisk possesses market power in the technology market.  *See* Section II.A., *supra*.

[16]  *See also State of New York by Abrams v. Anheuser-Busch, Inc.,* 811 F. Supp. 848, 873 & n.70 (E.D.N.Y. 1993)  (concluding that a "39% share is below that which has been deemed sufficient to confer market power in any previous [vertical restraints] decision" and noting that "[t]here do not appear to be any vertical restraint cases in which a possessor of less than 70% of the relevant market possessed market power").

In the flash memory products market, PNY offers a "new" allegation that SanDisk has made anticompetitive threats to "retailers carrying products containing flash memory chips not licensed or manufactured by SanDisk."   FAC ¶ 139.   Courts have consistently found, however, that pre-litigation communications reasonably related to potential litigation are entitled to *Noerr-Pennington* immunity.[17]   Indeed, unless the communication is objectively baseless, federal courts have extended *Noerr-Pennington* immunity to a party's communications with a competitor's customers.   *See GP Indus., Inc. v. Eran Indus., Inc.*, 500 F.3d 1369, 1374-75 (Fed. Cir. 2007) (holding that letters to customers must be objectively baseless to lose *Noerr* immunity).[18]   As noted, PNY does not allege that SanDisk's enforcement-related communications were objectively baseless.   Accordingly, SanDisk's alleged communications are immune under *Noerr-Pennington*.   *See, e.g., Contech Stormwater Solutions, Inc. v. Baysaver Techs., Inc.*, 534 F. Supp. 2d 616 (D. Md. 2008) (affirming summary judgment where notice of lawsuit letter sent to a competitor's customers alleging patent infringement and threatening retaliation was not objectively baseless).

PNY also alleges that SanDisk has required retailers to enter exclusive dealing arrangements regarding flash memory systems products and other memory products.   FAC ¶ 142.   But exclusive dealing relationships are not presumptively anticompetitive, and the FAC does not explain why SanDisk's contracts are anticompetitive.   *See Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 735 (9th Cir. 1987) ("[A]n agreement between a manufacturer and a distributor to establish an exclusive distributorship is not, standing alone, a violation of antitrust laws, and in most circumstances does not adversely affect competition in the market." (citation omitted)).

## C.   PNY Still Has Not Alleged Harm To Competition In Connection With Its New Section 1 Claims

Finally, as discussed above, the FAC fails to adequately allege harm to competition in the

---

[17]   *See e.g., Sosa v. DIRECTTV, Inc.*, 437 F.3d 923, 938 (9th Cir. 2006); *Globetrotter Software, Inc. v. Elan Computer Grp., Inc.*, 362 F.3d 1367, 1377 (Fed. Cir. 2004) (holding pre-litigation communications alleging patent infringement must be objectively baseless to support liability).

[18]   *See also Eazypower Corp. v. Alden Corp*, 2003 WL 22859492 (N.D. Ill. Dec. 2, 2003); *Matsushita Elecs. Corp. v. Loral Corp.*, 974 F. Supp. 345, 359 (S.D.N.Y. 1997) (extending immunity to infringement warning letters sent to customers of defendants); *accord Fisher Tool Co. v. Gillet Outillage*, 530 F.3d 1063, 1068-69 (9th Cir. 2008) (holding that threats to customers did not violate the Lanham Act absent a showing of bad faith).

DEFENDANT'S NOTICE OF MOTION, MOTION AND
MEM. IN SUPPORT OF MOTION TO DISMISS

CASE NO.: C-11-04689 YGR

1  putative flash memory technology and chip markets. Further, PNY has not alleged harm to

2  competition in the purported flash memory systems and products markets.

3      Indeed, PNY's allegations illustrate that SanDisk's alleged misconduct cannot harm

4  competition in the systems or products markets because competitors can easily expand output in

5  these markets. PNY alleges that "[a]ggregators are nimble market participants" that "can take

6  advantage of [a] price drop [in chips] to produce and/or sell lower-cost systems or products." FAC

7  ¶ 33.[19] As a result, "[a]ggregators function as mavericks in the marketplace and can pursue

8  aggressive and independent pricing strategies, all to the benefit of consumers." *Id.* ¶ 34. Given

9  these allegations, SanDisk plainly cannot control output or price in the systems or products markets,

10  and therefore, the alleged misconduct cannot harm competition in these putative markets.[20] *See*

11  *Rebel Oil*, 51 F.3d at 1444 (§ 1 claim failed where defendant's competitors could expand output).

12  **VI. PNY'S STATE LAW AND DECLARATORY JUDGMENT CLAIMS SHOULD BE DISMISSED**

13

14      PNY alleges (i) a Cartwright Act, California Business & Professions Code § 16727 unlawful

15  tying claim (Count VI), (ii) an unfair competition claim pursuant to Cal. Bus. & Prof. Code § 17200

16  (Count VII), and (iii) a declaratory relief claim seeking a declaration that the License, which

17  SanDisk is enforcing against PNY in a pending state court case, FAC ¶ 167, is unenforceable for

18  patent misuse (Count V). These claims should be dismissed.

19      As a threshold issue, this Court possess only supplemental jurisdiction over PNY's state law

20  claims pursuant to 28 U.S.C. § 1367. *See* FAC ¶¶ 11-12 (alleging PNY and SanDisk are both

21  Delaware corporations); *id.* ¶¶ 14, 235 (alleging supplemental jurisdiction). Because PNY's federal

22  claims should be dismissed, this Court should decline to exercise jurisdiction over PNY's state law

23  claims. *See* 28 U.S.C. § 1367(c)(3); *Gini v. Las Vegas Metro. Police Dep't*, 40 F. 3d 1041,1046

24  (9th Cir. 1994) ("[I]n the *usual* case in which federal-law claims are eliminated before trial, the

25  [19] Similarly, in its prior opinion, the Court recognized that PNY's allegations that PNY and other
aggregators expanded output in the products market in response to a price increase contradicted any
26  contention that existing competitors could not expand output in the short run. Order at 15.

27  [20] As with the chip market, PNY's logarithmic regression, FAC ¶¶ 162-64 & Table 6, concerning
the price of flash memory products before and after the 2007 license program is inherently
28  speculative and logically flawed. *See* n. 11, *supra*.

DEFENDANT'S NOTICE OF MOTION, MOTION AND          CASE NO.: C-11-04689 YGR
MEM. IN SUPPORT OF MOTION TO DISMISS

1   balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state

2   law claims.").

3   PNY's state law and declaratory judgment claims should be dismissed for the following

4   additional independent reasons.

5   **A.     Because PNY's Federal Antitrust Claims Should Be Dismissed, PNY's
        Cartwright Act And § 17200 Claims Also Should Be Dismissed**

6

7   Section 17200 prohibits "any unlawful, unfair or fraudulent business act or practice."  Cal.

8   Bus. Prof. Code. § 17200; *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tele. Co.*, 20 Cal. 4th

9   163, 180 (1999).  PNY purports to plead claims under both the "unlawful" and "unfair" prongs of

10  § 17200.  FAC ¶¶ 237-38.  PNY's allegations under the unlawful prong simply borrow from its

11  federal antitrust claims, claiming that the alleged federal antitrust violations are the "unlawful"

12  conduct to which the § 17200 claim is directed.  *Id.* ¶ 238.  Because PNY has failed to adequately

13  plead its antitrust claims, its "unlawful" prong § 17200 claim fails as well.  *See Ingels v. Westwood*

14  *One Broad. Servs., Inc.*, 129 Cal. App. 4th 1050, 1060 (2005) ("If the [underlying] claim is

15  dismissed, then there is no unlawful act upon which to base the derivative Unfair Competition

16  claim" (internal quotation marks omitted); *Scripps Clinic v. Super. Ct.*, 108 Cal. App. 4th 917, 938–

17  39 (2003); *see also Krantz v. BT Visual Images*, 89 Cal. App. 4th 164, 178 (2001) (the viability of

18  an "unlawful" UCL claim stands or falls with the underlying claim).

19  PNY's "unfair" prong § 17200 claim should also be dismissed.  In cases like this one where

20  a competitor, rather than a consumer, alleges a violation of the "unfair" prong of § 17200, "'unfair'

21  in that section means conduct that threatens an incipient violation of an antitrust law, or violates the

22  policy or spirit of one of those laws because its effects are comparable to or the same as a violation

23  of the law, or otherwise significantly threatens or harms competition."  *Cel-Tech*, 20 Cal. 4th at 187;

24  FAC ¶ 1 ("PNY is a competitor of SanDisk.").  Because PNY has not adequately pled its federal

25  antitrust claims, and because its § 17200 claims are not materially different than its federal antitrust

26  claims, PNY's § 17200 claim based on the "unfair" prong also should be dismissed.  *See Apple Inc.*

27  *v. Samsung Elecs. Co.*, 2011 WL 4948567, *8-9 (N.D. Cal. Oct. 18, 2011); *DocMagic, Inc. v. Ellie*

28  *Mae, Inc.*, 2011 WL 871480, at *12-13 (N.D. Cal. Mar. 10, 2011).

DEFENDANT'S NOTICE OF MOTION, MOTION AND        CASE NO.: C-11-04689 YGR
MEM. IN SUPPORT OF MOTION TO DISMISS

**B.**    **The Court Should Exercise Its Discretion And Decline Jurisdiction Over PNY's Declaratory Relief Act Claim**

The Declaratory Judgment Act is "deliberately cast in terms of permissive, rather than mandatory, authority.  The Act gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so."  *Government Emplees. Ins. Co. v. Dizol*, 133 F.3d 1220, 1223 (9th Cir. 1998) (citations and internal quotation marks omitted).  Where, as here, there is a prior state court case between the same parties raising the same issues, there is a presumption against the exercise of Declaratory Judgment Act jurisdiction.  *See id.* at 1225; *see also Pub. Serv. Comm'n. v. Wycoff Co.*, 344 U.S. 237, 243 (1952) ("Federal courts will not seize litigations from state courts merely because one, normally a defendant, goes to federal court to begin his federal-law defense before the state court begins the case under state law.").[21]  Here, PNY's declaratory relief claim mirrors its affirmative defenses in SanDisk's earlier-filed state court collection action.  *Compare* FAC, *with* Ex. A (PNY's State Court Counterclaims and Affirmative Defenses).  Accordingly, in the interests of judicial economy and discouraging blatant forum shopping, this Court should exercise its discretion to dismiss PNY's declaratory relief claim.

In addition, since the conduct underlying PNY's patent misuse claim—SanDisk's licensing practices—is not anticompetitive and does not amount to a tying arrangement, PNY has failed to plead conduct that fits within the "narrow" scope of the patent misuse doctrine.  *See Princo v. Int'l Trade Comm'n*, 616 F.3d 1318, 1329 (Fed. Cir. 2010).

## CONCLUSION

For all of the foregoing reasons, we respectfully request that this Court dismiss PNY's complaint in its entirety with prejudice.

---

[21]    *Id.* ("[W]here the complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending or threatened state court action, it is the character of the threatened action, and not of the defense, which will determine whether there is federal-question jurisdiction in the District Court."); *Luckett v. Delpark, Inc.*, 270 U.S. 496, 502 (1926) ("[A] suit by a patentee for royalties under a license ... is not a suit under the patent laws of the United States, and cannot be maintained in a federal court as such.").

1 | DATED:  July 16, 2012.          SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP

2

3

By:   ___/s/ *David W. Hansen*_____

DAVID W. HANSEN
Counsel for Defendant,
SANDISK CORPORATION

DEFENDANT'S NOTICE OF MOTION, MOTION AND          CASE NO.: C-11-04689 YGR
MEM. IN SUPPORT OF MOTION TO DISMISS

1

## <u>CERTIFICATE OF SERVICE</u>

2      I hereby certify on this 16th day of July, 2012 that a copy of the foregoing was filed

3   electronically through the Court's CM/ECF system, with notice of case activity automatically

4   generated and sent electronically to all counsel of record who have registered for electronic filing at

5   their electronic addresses of record, constituting service per General Order 45, section IX.B.

6

7   DATE:  July 16, 2012          By:  _____ /s/ *David W. Hansen* _____

8                                      DAVID W. HANSEN

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S NOTICE OF MOTION, MOTION AND                    CASE NO.: C-11-04689 YGR
MEM. IN SUPPORT OF MOTION TO DISMISS